SO ORDERED.

SIGNED this 18 day of April, 2016.



_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| BERNICE TREVONE HARRIS-TOWNES | 15-06492-5-JNC |
| DEBTOR | |
| IN RE: | |
| JANICE ELAINE HARRIS | 15-06493-5-JNC |
| DEBTOR | |

## ORDER SUSTAINING TRUSTEE'S OBJECTIONS TO DEBTORS' OFFICIAL FORMS 22C-1

The matters[1] before the court for case number 15-06492-5-JNC are the Objection to Debtor's Official Form 22C-1 filed by the Trustee on January 6, 2016 (D.E. 10; the "Objection") and the Response in Opposition filed by the Debtor on January 28, 2016 (D.E. 11; the "Response"); and for case number 15-06493-5-JNC are the Objection to Debtor's Official Form 22C-1 filed by the Trustee on January 6, 2016 (D.E. 14; the "Second Objection") and a Response in Opposition

---

[1] This single order pertains to the two identified cases as the issues raised in each are intertwined and identical.

filed by the Debtor on January 28, 2016 (D.E. 15; the "Second Response").  A joint hearing on the two matters was noticed for and held in Greenville, North Carolina on April 6, 2016.  Both debtors, their shared counsel, and counsel for the chapter 13 trustee assigned to the case (the "Trustee") appeared and presented their respective positions. After consideration of the pleadings, arguments of counsel, evidence presented at hearing, and other matters of record, the court finds and determines as follows:

## BACKGROUND

Bernice Trevone Harris-Townes (the "Daughter Debtor") filed a voluntary petition for relief under chapter 13 of the United States Bankruptcy Code on December 1, 2015. Her schedules and claims filed show $38,155.10 in secured debts, $1,366.08 in unsecured priority claims, and general unsecured claims of $34,259.94, of which $30,902.38 is listed as non-dischargeable student loan debt.  On her Schedule I, the Daughter Debtor lists a monthly contribution of $987.50 from her mother as part of her monthly income. With her petition, she also filed Official Forms 122C-1 and 122C-2 (the "Forms"),[2] listing among other things a household size of two and the $987.50 contribution.[3]  She calculated a resultant projected monthly disposable income of $23.14.[4]

Janice Elaine Harris (the "Mother Debtor"), who is the mother of the Daughter Debtor, also filed a voluntary petition for relief under chapter 13 of the United States Bankruptcy Code on December 1, 2015. Her schedules and claims filed show $31,329.28 in secured debts, $12,275.35

---

[2] Both Debtors filed petitions for relief on the date on which the newly revised bankruptcy forms went into effect. For the sake of simplicity, the court will refer to the forms by their current names throughout this order, although the Daughter Debtor completed and filed the former versions of the forms. Substantively, the forms are the same.

[3] The Debtors explained that their joint household monthly expenses averaged $1975.00, consisting of the following: $675.00 in rent; $700 for food; $200.00 for phone; internet, and cable, and $400 per month for utilities. One-half of the total is $987.50.

[4] As addressed further below, the Daughter Debtor is an "above-median income debtor" and the applicable chapter 13 plan commitment period for her case is listed at five years.

2

in unsecured priority claims, and $40,349.69 in general unsecured claims. On her Schedule I, she lists a monthly contribution of $987.50 from the Daughter Debtor as part of her income. With her petition for relief, the Mother Debtor filed an Official Form 22C-1 and also listed a household size of two. She calculated her current monthly income to be $3,076.80, resulting in an annualized income of $36,921.60, which is below median for a household size of one or two in North Carolina. Accordingly, her applicable commitment period is three years.[5] Therefore, under the asserted facts of her case, no Form 22C-2 or means test deductions are necessary to determine her applicable disposable income.

The Daughter Debtor and Mother Debtor (together, the "Debtors") reside together in a shared house or apartment. Reportedly, they signed a lease as equal co-tenants, although no authenticated lease document was presented at the hearing. The Daughter Debtor testified that they have maintained this living arrangement for at least fifteen months, as the Mother Debtor has suffered various health problems and frequently requires physical assistance from her. The Debtors testified that each met their own general expenses, but that they split joint expenses relating to the living arrangement equally. If one of the Debtors paid a bill stemming from the joint living arrangement such as a monthly lease or utility payment, the other reimbursed the payor as soon as practicable. The Debtors own and use separate cars, but they share an automobile insurance policy with each paying one half of the premium.[6]

---

[5] The court makes no finding in this order as to whether the Mother Debtor is in fact a "below-median income" debtor and the length of her proper chapter 13 commitment period. As shown below, she must re-submit certain chapter 13 forms, which may or may not affect such determination and, ultimately, the permissible length and terms of her plan.

[6] The joint monthly automobile insurance premium is $166.66; each Debtor pays $83.33 per month.

The Debtors do not jointly own any assets. The Debtors occasionally borrow the other's car, but each separately covers her own vehicle repair and operating expenses. Furniture and other household items are also owned separately.

Each Debtor is responsible for her own individually incurred expenses or debts, such as medical bills and personal loans. Each Debtor maintains her own separate stream of income and they do not co-mingle funds.[7] The Daughter Debtor is employed while the Mother Debtor is disabled and receives Social Security benefits and collects retirement income. The Debtors file separate tax returns and neither claims the other as a tax dependent.

The Debtors argue that because of their shared roof, and one-half each payment of expenses associated with living together such as the lease and utilities, their financial lives are so mutually dependent and intertwined that they constitute and maintain a two-person "single economic unit" household. As a result, both assert a "household-size" of two in their two respective chapter 13 cases. The practical result of their position is an assertion of four dependents in two cases even though only two persons actually live and breathe in the household.

The Trustee contends that even with the joint living arrangement, a household size of one only is presented in each case for a total of two persons in two cases. He contends that allowing both Debtors to claim a household size of two results in an "absurdity under the means test" by generating a double counting of persons actually present. The Trustee further asserts that revision of the Forms reflecting a corrective reduction of household size to one in each case is required before either may proceed to plan confirmation. The respective Debtors' proposed chapter 13 plans remain unconfirmed pending the outcome of this matter.

---

[7] The Daughter Debtor is an authorized signer on the Mother Debtor's checking account for "reasons of convenience," but she does not deposit her own funds into the account and merely signs checks for her mother's monthly expenses.

## DISCUSSION

The issue for consideration by the court is whether the Mother Debtor and Daughter Debtor constitute a two-person household for purposes of 11 U.S.C. § 1325(b) allowable in two cases for a total of four dependents. Because the Mother Debtor's monthly income is below the applicable median income figure, the use of two deductions instead of one might not affect the ultimate distribution to unsecured creditors in her case. However, due to an above-median income, allowing the Daughter Debtor to claim deductions for two people significantly reduces the projected available disposable income available in her case, thereby materially affecting the percentage of claim return payable to unsecured creditors over the required sixty month life of her chapter 13 plan.

The Bankruptcy Code requires that a chapter 13 plan be proposed in good faith. 11 U.S.C. § 1325(a)(3). A chapter 13 debtor must first determine whether his or her monthly income, when annualized, equals an amount greater or less than the median income for his or her locality. If a debtor's annual income is above the local median figure, he or she must then calculate the resultant projected available "disposable income." The term "disposable income" is defined as "current monthly income . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor *or a dependent* . . . ." 11 U.S.C. § 1325(b)(2)(A)(i) (emphasis added). Current monthly income is calculated by using a debtor's wage history or other income sources. The term "amounts reasonably necessary to be expended" is explained in the next subsection, as § 1325(b)(3) directs an above-median chapter 13 debtor back to § 707(b)(2)(A) and (B). In short, a qualifying chapter 13 proposed plan is calculated through the "means test" contained in the Bankruptcy Code. 11 U.S.C. §§ 707(b)(2)(A) and (B). Once a chapter 13 debtor determines disposable income, he or she must then apply the particular applicable commitment period of either

5

three or five years by multiplying that amount by twelve and comparing it with the median income for his or her locality. 11 U.S.C. § 1325(b)(4).

To facilitate these calculations consistently, all chapter 13 debtors are required to submit <u>Official Form 122C-1: Statement of Your Current Monthly Income and Calculation of Commitment Period</u> with the bankruptcy petition. Chapter 13 debtors whose incomes are above median are further required to complete the <u>Official Form 122C-2: Chapter 13 Calculation of Your Disposable Income</u>, where debtors subtract various applicable National and Local Internal Revenue Service Standard deductions. The deductions are generally uniform, and in many instances are based upon or affected by a debtor's household size, generally with the amount provided for a deduction systematically increasing for each claimable additional dependent household member. Consequently, whether a single debtor may include other persons as dependents for Form 122C-2 purposes and thereby increase the amount taken from gross disposable income will significantly affect the available return to unsecured creditors in a case, particularly when multiplied by a factor of sixty months. Thus, the allowable household size is of critical importance as a threshold matter in a chapter 13 case.

The terms "household" and "dependent" are not defined in the Bankruptcy Code. Consequently, courts have developed various approaches in bankruptcy cases to define the terms. In *Johnson v. Zimmer*, 686 F.3d 224, 226 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 846, 184 L.Ed.2d 655 (2013), the United States Court of Appeals for the Fourth Circuit analyzed three different approaches to arrive at a "household size" properly under Bankruptcy Code § 1325(b): (1) the United States Census Bureau analysis of counting the number of "heads on beds" for all persons residing in a home regardless of economic impact; (2) the Internal Revenue Service definition of persons qualifying as dependents of the debtor for federal tax return treatment; and (3) the

6

"economic unit" test that recognizes all individuals in a home, regardless of traditional familial relationship, that a "debtor financially supports and those who financially support the debtor." *Johnson*, 686 F.3d at 237.

After a detailed discussion of the three tests, the Fourth Circuit found the "economic unit" approach to be the most flexible in fitting the varying economic reality and living arrangements presented in society. Only the economic unit standard "recognizes that a debtor's 'household' may include non-family members and individuals who could not be claimed as dependents on the debtor's federal income tax return, but who nonetheless directly impact the debtor's financial situation." *Id*. at 237. *See also In re Morrison*, 443 B.R. 378 (Bankr. M.D.N.C. 2011); *In re Herbert*, 405 B.R. 165 (Bankr. W.D.N.C. 2008); and *In re Brown*, Case No. 15-05477-5-JNC, 2016 WL 859279 (Bankr. E.D.N.C. March 4, 2016).

Citing *Morrison,* the Debtors in the instant cases argue that sharing a physical roof and equally splitting common household expenses such as rent and utilities are sufficient to meet the "single economic unit" standard. In *Morrison*, Judge Waldrep of the Middle District of North Carolina bankruptcy court enumerated seven succinct factors to be evaluated on a "case-by-case basis" to determine if two individuals constitute one economic unit, namely:

> 1) the degree of financial support provided to the individual by the debtor; 2) the degree of financial support provided to the debtor by the individual; 3) the extent to which the individual and the debtor share income and expenses; 4) the extent to which there is joint ownership of property; 5) the extent to which there are joint liabilities; 6) the extent to which assets owned by the debtor or the individual are shared, regardless of title; and 7) any other type of financial inter-mingling or interdependency between the debtor and the individual.

*Morrison*, 443 B.R. at 378.

The *Morrison* debtor resided in a condominium owned solely by her boyfriend, who did not file bankruptcy. While the non-debtor boyfriend made monthly mortgage payments on his

7

condominium, the girlfriend-debtor apparently paid all other bills incurred by the two of them in the course of living together including utilities, food and other household expenses. They co-mingled and shared a "significant amount of their income and expense." The bankruptcy court held that the debtor and her boyfriend together were a two-person household and allowed the debtor to list and deduct the boyfriend as a dependent for disposable income and chapter 13 plan purposes.

In the present case, the Mother Debtor and Daughter Debtor each have their own income sources and maintain separate bank accounts. They do not share income or otherwise engage in financial intermingling. Each pays her own bills from the separate bank account. Neither supports the other. Although they "share" inseparable joint living expenses such as the lease and utilities, they do so in order to lower the net outlay required to maintain a roof over their heads. If one fully pays a joint expense, half of that payment is only a short-term loan as the payor is timely reimbursed by the other person for her corresponding half of the cost. The joint expenses are estimated at $1975.00 per month, which the Debtors attempt to address on the Forms by having each show receipt of $987.50 (being one-half of $1975.00) even though no such monthly checks are actually written or deposits made. By showing that each receives $987.50 from the other but by still reflecting full apartment expenses in their Forms, the fictional payment from each to the other is "merely a wash."

Also unlike the present cases, only one person was presented as a debtor in *Morrison* as the boyfriend did not file a chapter 13 bankruptcy petition. The debtor in that case did not list a doubling up of a household size of two twice on separate Forms 22C-1 and 22C-2 (now Forms 122C), as is the case here.

What the Debtors actually seek in the present two cases is to disguise a "heads-on-beds" test by calling the arrangement a "single economic unit." As the Fourth Circuit warned, "the heads-on-beds approach poses the risk of skewing the calculation by being over-inclusive and thus risks misrepresenting a debtor's ability to pay." *Johnson*, 686 F.3d at 239. By creating four dependents in the present cases where only two persons exist, the Debtors seek to "skew" the system just as the circuit court forecast.

The Trustee's position that the sum of persons claimed as dependents in related cases cannot exceed the actual live human beings present has the merit of reflecting reality. In *Johnson*, the appellate court sanctioned and approved a fractional person to reflect shared child custody arrangements, which is a common reality in many homes. The single economic unit test allows flexibility in household number analysis when needed to show the actual economic reality. However, the Debtors here would have us believe that what was true yesterday (one plus one equals two) is not true today because they assert one plus one equals four tomorrow. Perhaps such an absurd position works in a parallel universe, but here it can only be described as an attempt at impermissible case relativism that will not be allowed to stand.

## CONCLUSION

The Trustee's Objections in both cases are **SUSTAINED**. The court finds that the Debtors are two financially independent individuals who each maintain a separate household of one person. The court further finds that allowing both the Mother Debtor and Daughter Debtor to claim a household size of two constitutes an improper and impermissible result under the means test that substantially affects the projected disposable income calculation and harms creditors in at least the Daughter Debtor's case.

Accordingly, within fourteen (14) days of the date of this order, if they wish to remain in chapter 13, both the Daughter Debtor and Mother Debtor are required to amend their respective Forms 122C-1 and 122C-2, their chapter 13 plans and all other affected forms, to list a household size of one each and reflect their respective separate and actual income and expenses, including a proper allocation of shared costs. Subsequent timely objections of the Trustee to the amended filings are deemed reserved.

**END OF DOCUMENT**